You may proceed. Franny Forsman, Your Honors, for the hearing on behalf of Marvin Bockting. Mr. Bockting has been in prison for over 15 years now based upon a trial in which the only person who is alleged to have been a witness to the crime did not testify, and a post-conviction proceeding in State court where he wasn't present and he wasn't represented by counsel. The facts which the State has relied upon in its brief are facts which were derived from an illegal proceeding in the State of Nevada. It's now been declared to be illegal, and the State has never refuted the fact that Mr. Bockting could not possibly have sustained the burden of proof which the federal court applied to him on the IAC count could not possibly have done that. He wasn't there. They didn't bring him there. They didn't appoint counsel for him. They simply had an ex parte proceeding. I'd like to quote this. What proceeding is that? That was the State post-conviction proceeding. Oh, I see. And when he got to federal court. That was totally ex parte. Totally ex parte. He was not there. There's no question. It's irrefuted in this record. He was not there. He was not represented by counsel. The judge called his former lawyer in, examined his former lawyer without the presence of the defendant, and the federal district court applied the presumption of correctness to that proceeding. In fairness, the federal district court didn't know that. Nobody told him that because my client was a. So he was operating kind of on the normal presumptions. That there was some real proceeding that happened. I think I'd like to concentrate on two issues in this argument, Your Honors. The first is the Idaho v. Wright issue and the issue of the fact that the case was based solely on the hearsay statements of the child. And the second issue is the claim which has not been certified yet for appealability. That's been reserved for this merits appeal, and that is the ineffective assistance of counsel claim. With regard to the Idaho v. Wright claim, two weeks before the trial in this case, the prosecutor filed a notice that he intended to introduce only hearsay statements of the child. This was not something that the prosecutor came up with because of something that happened in the courtroom. It is clear from this record that what bothered both the judge and the prosecutor was the inconsistency of the child's prior statements. It is important to understand that at the preliminary hearing, the child testified inconsistently with what the detective and the mother said at trial in this case that she would say, or that she had said. Additionally, and most importantly, is that the district attorney sent the child to a counselor, and the counselor testified at trial. And basically the counselor testified at trial that she, her behavior was consistent with that of a child molestation victim because she denied that anything happened. And so every time except for the two occasions where the mother says she woke up from a bad dream and described events, and the detective says that he went through an interview which was apparently recorded, the Nevada Supreme Court says they were pleased to see how well that interview was conducted, yet there is no description of the kinds of questions that he asks in the record. There is no tape in the record. No tape was ever admitted. So how on earth the Nevada Supreme Court could decide that that interview was one of the indices of reliability because of the way it was conducted? Understand Detective Zinovich had no training in the examination of juveniles whatsoever. He testified he had examined a number of sexual assault victims, but he also testified that he had no training in the interviewing of juveniles. He had general interrogation training. And for the Nevada, I think that is one of the indices for you to determine whether or not the Nevada Supreme Court's decision was contrary to or an unreasonable application of the clearly established Supreme Court law, which is that found in both Idaho v. Wright and Maryland v. Craig. So let me back up a minute. Idaho v. Wright is virtually indistinguishable in its facts from this case, which I suggest to the Court means that not only do we have an unreasonable application of Idaho v. Wright, but we also have contrary to Idaho v. Wright. In Idaho v. Wright, the child was two and a half years old. There was no dispute in Idaho v. Wright with regard to unavailability, and I'll get to that issue in a moment. The parents were estranged. In this case, the parents were in the middle of a break-up of a divorce. In Idaho v. Wright, the child was alleged to have first reported the sexual abuse to a female companion of the father. It was the mother in Idaho v. Wright who was convicted of the crime. And then the child was... And maybe you can link it into Idaho v. Wright. Are you saying that there, as a matter of law, there has to be a finding of unavailability and that Idaho v. Wright says that and that's what we then apply to this case? Idaho v. Wright doesn't say that because there was no dispute in Idaho v. Wright with regard to that. But I think what you can look to on the unavailability issue, Your Honor, because that really is the first problem that happens before we even get to the reliability, is whether or not the district court was obligated to do something. I think that the way that you can tell is on the same day, Maryland v. Craig was decided. Idaho v. Wright did not reach that issue. It said we don't have to. Now, they did talk about the general requirement of unavailability in Idaho v. Wright at page 815. And Justice Scalia, in his dissent, and Craig decided the same day, says that our confrontation clause conditions for the admission of hearsay have long included a general requirement of unavailability of the declarant, citing Idaho v. Wright. So I don't think that Idaho v. Wright abrogated Ohio v. Roberts or other cases in which it is said you have to have some showing of necessity. The ludicrous result that occurs when you take Idaho v. Wright and Maryland v. Craig is that if, or even our Webb v. Lewis is as if there is a videotape, or let's take the Maryland v. Craig. If you put the children behind a screen and have them testify, there must be a showing of necessity to do that. And there must be a hearing. There must be findings. The state's position is that if even a jury has the opportunity to have some testimony and cross-examination of the children, there must be a showing of necessity. But if the child doesn't testify at all, then you don't have to show anything, which is what happened here. Let me ask you, you started off on Idaho v. Wright. Could I come back to that? Certainly. As I understand, Idaho v. Wright does not forbid the procedures you wanted. But I don't see anything in Idaho v. Wright that requires the procedures you wanted to have in the case. Regarding unavailability, Your Honor? Yes. Yes, that's correct because it didn't reach the issue of unavailability because the parties agreed. Right. So then we've had two cases since then in our circuit, Webb and Swan. Now the Swan case authored by Judge Wright, although you could argue it might be dicta, certainly cuts against your argument. How would you suggest, aside from attacking it on the basis of dicta, how would you suggest that Swan doesn't foreclose your argument? Your Honor, I'm sorry. I'm not focusing on Swan. Let me see if I have discussed it in my brief. If Swan is the case that deals with White v. Illinois, where ‑‑ I'm sorry. I'm not focusing on the case. I guess the only thing I can do is to take your suggestion and say it must be dicta. That's why I didn't focus on it. Well, of course, the fact is it's one of our opinions. You're really focusing on what the Supreme Court makes us do. Well, that's right. And I think you can use, as Van Tran says, you can use your opinions to determine what Idaho v. Wright says. But I don't ‑‑ you can't. Ohio v. Roberts, the Supreme Court, the language in Idaho v. Wright, which talks about the general requirement of unavailability, both of those cases suggest that even if you don't have to have a full-blown unavailability determination, there must be some determination of necessity. There must be some finding before we turn to a catch-all provision of the hearsay rule and allow what happened in this case to happen. Because what would happen if ‑‑ Let me just go back then, because, again, we're trying to focus on the Supreme Court law. So Idaho v. Wright had that, you know, kind of dangling phrase where they didn't deal with unavailability. But you're saying even if there's not a requirement for unavailability, that there is a Supreme Court requirement for at least some necessity before you invoke the presentation of that kind of witness. In fact, that's even right in Idaho v. Wright at page 814. And it says, First, in conformance with the framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. And then goes on. And that is the only way that you can read Idaho v. Wright and Maryland v. Craig and have them make any sense. Because if you read Idaho v. Wright as the state does to say there needs to be no showing, and what in this case they argue is the silence of the record speaks for itself, if you accept that, then the best thing for an aggressive child molestation investigator to do is to do what happened here. If you get inconsistent statements from a child, either from the counselor that you sent the child to or in the preliminary hearing as has happened here, then all that needs to happen is make sure the child knows that if they get into the courtroom, they can just clam up. And then they won't need to worry about the inconsistent statements. The investigator will not need to worry about cross-examination of the child victim and the case can proceed without a witness. Because they don't even need to show necessity in that circumstance, the state argues. On the other hand, if what you were to do is to say, listen, this child, we don't even know any of this stuff. We don't know if the child is nervous because her stepfather is sitting there. We don't know any of that because none of that's in this record. We don't know any of that. We know that she could testify in the preliminary hearing and we know she could talk to a counselor. And in both those cases, she testified inconsistently to what was ultimately presented at trial. We know those things. But had instead we said, okay, we'll take the child and we'll put her behind a screen because we're making findings of necessity based upon the fact that she's nervous when she's in front of the stepfather and all of the findings that are required both by the Nevada Supreme Court, strangely enough, 10 days after the decision in this case, as well as by Maryland v. Craig, then the state would have had to make a showing of necessity. And that doesn't make any sense. Those two cases were decided the same day. I think you have to take the language out of Idaho v. Wright, which says there must be a showing of necessity. Even if the Supreme Court has not decided that yet, decided the issue of unavailability yet, and the state suggests that they've decided it in White v. Illinois, that's not the case. White v. Illinois basically said there's no constitutional requirement of unavailability. And it was a case that was a firmly rooted exception of the hearsay rule case. It was either a spontaneous expression and I think it was a medical examination question. We don't have that here. Nobody's suggesting here that the interview with the detective was a medical examination and no one's suggesting that this is a spontaneous expression that could have come under a firmly rooted exception. Everybody agrees it does not come under a firmly rooted exception. So White v. Illinois doesn't help us. I think the only thing from the Supreme Court that is helpful at this point would be that there must be some sort of determination of necessity. I don't think anybody questions that. With regard to the ineffective assistance of counsel claim, Your Honors, this is a very disturbing situation that happened here, not only because of what happened in the Nevada courts with regard to the post-conviction proceeding, but also because this case is similar, and you've seen this before from this same public defender's office, and that is the practice of the Clark County public defender of running their clients on polygraphs for fiscal reasons. And that's what's happened here. There was no opportunity for Mr. Bokting to question his counsel at the post-conviction hearing. So all that we know is that the, in fact, there was no opportunity to question even about what the polygraph result meant. I think that this case has to go back anyway, in my opinion, on the IAC claim, because there just simply is no way that the federal court finding a presumption of correctness on the exhausted claim of ineffective assistance counsel can stand. Now that he's been appointed counsel, he did not have counsel at the federal habeas proceeding. He was only appointed counsel on appeal. So the representations that were made by the state to the district court and the assumption that the federal district court had that there was some sort of real proceeding that happened in the state courts obviously cannot stand. And so the case must go back on that issue. But I suggest to you that the Nevada Supreme Court decision and the analysis by the federal district court that the Nevada Supreme Court decision was not contrary to and was not an unreasonable application of Idaho v. Wright also cannot stand. And probably the thing that is most striking about that is that the Nevada Supreme Court explicitly said that they would not look, that they did not and could not under Idaho v. Wright, which was error, look to those circumstances which would show that the statements were unreliable. And that is the most striking basis on which I think you must find that the federal district court erred. And I would like to reserve minutes for rebuttal. Thank you. That's fine. Good morning. May it please the Court. My name is Vic Schulze. I'm with the Attorney General's Office of the State of Nevada in Las Vegas. There are a number of gaping holes in Bockington's argument today from beginning to end, starting with the application of Idaho v. Wright and the Craig case. In Idaho v. Wright, the U.S. Supreme Court did not deal with the issue of unavailability. They have never held. I think that's been conceded. Yeah, and I think there was a lot of briefing on that, but that's basically what Bockington's counsel has said, that it did not deal with it specifically, that the issue, and one I'd like you to address, is necessity. Is what? Necessity. Necessity, I would argue, is also not an issue, because the necessity argument raised by Bockting is a misapplication of the Craig case. Craig and the former Coy v. Iowa case dealt with specifically, and this was ruled on in Wright v. Illinois, those two cases, Coy and Craig, dealt only with the limited protective in-court device. One was the screening of the defendant from the victim. The other was closed-circuit television. Well, Wright deals with an established hearsay exception. It does. So it doesn't bear at all on Coy or Craig. And Craig assumes that you need necessity a fortiori if you're going to use some in-court thing. So please address that. Don't rely on Wright, which didn't deal with the issue at all. Wright didn't deal with that issue, but what Wright commented on was the fact that the Coy case and the Craig case were limited only to the facts of an in-court protective device, whether that be the screening. But as counsel made the point on the other side, if you need necessity there, a fortiori, you need it when there's no in-court procedure. The U.S. Supreme Court's drawn a distinction, though, between in-court and out-of-court statements. Drawn a distinction, I think. The Craig case and Coy only dealt with the facts that they deal with, which were those in-court protective devices. If there is no U.S. Supreme Court ruling, basically what counsel is saying is that those two cases appear to be inconsistent and there ought to be a rule that the U.S. Supreme Court has never come down with. But I would suggest to you that under 28 U.S.C. 2254D, which is the standard that we're dealing with here on reasonable application and deference to state court legal findings, if there is no U.S. Supreme Court decision directly on point, then what the Nevada Supreme Court did could not be inconsistent with a nonexistent U.S. The Nevada Supreme Court could not be inconsistent with a nonexistent U.S. Supreme Court case. They left that issue open in that Craig case. There was no necessity issue because this was not an in-court protective device and the unavailability issue has never been declared to be the law by the U.S. Supreme Court. I would suggest, though, even if it had been, there were findings by the state court that this witness was unavailable. It is not true. It is not a correct rendition of the facts of this case that the prosecutor or the court simply relied on inconsistent testimony of the child between the preliminary hearing and the trial. What happened at trial was they were attempting to swear this child in. The child was essentially catatonic on the witness stand. She wouldn't even stand up and raise her hand when the trial judge kept prompting her, well, honey, will you stand up? This is the time you have to be sworn. And the prosecutor said, you've got to stand up and be sworn. The child was unresponsive even at that point because of her fear of the courtroom environment. You don't know what the reason was. I'm sorry? You do not know the reason. She could have been unwilling to testify against her father. You don't know. You're speculating when you tell us. I would suggest to you that it's more than speculation, Your Honor, because when the child was in a one-on-one situation, at one point in time with her mother and at one point in time with the police officer who investigated her, who interviewed her, she was willing to open up in those two situations. Well, her only sworn testimony is it didn't happen. Isn't that correct? That is correct. That was the only sworn testimony by this witness. Yes, that's correct. That was a preliminary hearing. All right. Face me. At trial, what happened was she did not testify. She was unresponsive both to the prosecutor and to the judge. She wouldn't even be sworn. For a couple of minutes. I'm sorry? For a couple of minutes. Absolutely. She simply would not respond to any. No more effort to get her. Here's the key witness, and they say, oh, you can't do it. She's off. Well, I would suggest I don't think the record indicates that the state court proceedings were as cavalier as you're making them sound. Whether they were cavalier or not, basically it was a one-shot short-term proposition. She didn't raise her hand, didn't stand up. They said witness can't testify. Right? She was found to be unavailable at that point. Unavailable. There was no further effort to bring in a counselor, to talk to her separately, to bring her into chambers. Nothing. Correct? None of that was done. That's correct. So on the basis of simply asking her to stand up, now's the time to testify, honey. She didn't do it. That then rendered her unavailable. Well, she was implored by both the court and the prosecutor. She had been through part of that process. She understood from the preliminary hearing. And, again, I am speculating at this point that she understood that process. But she had been through that process one time in the preliminary hearing, simply raising her hand and being sworn. And she couldn't do that. And she was completely unresponsive. At that point in time, the district court found that she was unavailable as a witness and then allowed the statements, the hearsay statements in. And the prosecutor was already prepared to put on those statements, right? The prosecutor was. He had given notice to the defense attorney. He expected that she'd be knocked out and that he'd have the benefit of the hearsay. I think he had interviewed her in the past. He remembered the problems she had at the prelim. And I think both he and the defense attorney, who at that point presented a written objection based on COI v. Iowa, expected that the child may have a difficulty in the courtroom proceeding. Keep in mind, this is a 6-year-old child in a courtroom who's testifying in a sexual assault case. The U.S. Supreme Court has recognized that children in that kind of situation as witnesses are different. They're not adults. You and I would not want to go into court and discuss a sexual incident that occurred to us, even if it was voluntary. I wouldn't want to do that in a courtroom. But certainly a 6-year-old victim of a sexual assault would not want to have to go into a room of strangers and go into those kinds of details. Well, you certainly are free to speculate that. Why don't you go on to the particularized guarantees of reliability in the essay? The particularized guarantees of trustworthiness that the Nevada Supreme Court found from its review of the record were its application of Idaho. Keep in mind, this case went up to the U.S. Supreme Court. The U.S. Supreme Court remanded and said, please apply Idaho v. Wright. Pursuant to their duties later, under 2254D, the Nevada Supreme Court applied Idaho v. Wright. They applied the correct standard. They cited the case at least 10 times, and they did, in our view, a noble job of applying Idaho v. Wright. The child initiated the contact with the mother. She came out of a dream? I don't know what she was dreaming about. Again, to take the court's suggestion. The first point is somebody wakes up out of sleep with a story, and you know people dream. But I would take the court upon its suggestion not to speculate that it was a dream. I don't know that I would ever trust somebody's statement out of sleep. I don't see how that confers an iota of credibility or reliability. It wasn't right out of sleep. She woke up. She went into the living room. She was visibly upset. Mother asked her what's wrong. She's upset, and she got out of sleep. Is that right? She woke up. She left the bedroom, went out into the living room where the mother was, and approached the mother. Without being coached by anybody or without being encouraged, she approached mother. She is upset. Mother has no clue what's going on and says, what's wrong? Child is hesitant. Child doesn't want to tell her what's wrong. Finally gets around. Mother keeps asking her, what is wrong with you? And at that point the child says, well, I'm afraid to tell you because dad said you would make him leave and he would beat my butt if I told you. Finally the child gets around to saying he put his pee-pee in my pee-pee and the other statements of sexual assault. Proper language was used. It was the child that initiated the statement. These are all findings by the Nevada Supreme Court. You say proper language. Doesn't the mother say that's the way we talked? Isn't that her testimony? I would suggest to you that if the child had been coached by somebody, I don't think the child would consistently have used terms that are appropriate for a 6-year-old child, even with a police officer. The mother's testimony is we used that language between us. He didn't have to be coached. That was the way the mother talked to him. Isn't this a family that sort of bathes together? They shower with this kid? That was the defendant's testimony that they at times had taken what he called family showers, yes. And that was part of his defense that some of the child's sexual knowledge may have come from those incidents and other incidents where the child walked in on the parents when they were engaging in sexual activity in the bedroom. They lived in a very small. He's a pretty sophisticated 6-year-old. I don't know. I don't know what she. From those experiences. You'd have to say yes. No. There's no evidence that she had something called experiences. Absolutely not. She watched these experiences. That's the testimony. The testimony is not that she watched. The testimony was she walked in on the parents a couple of times when they were engaging in sex and she was ordered out of the bedroom virtually immediately. Now, the experience, if you want to call it that, was when the child showered apparently with both parents and asked about body parts. That was his testimony in direct examination in the defense. And you wouldn't say that was sophistication? It's not sophistication regarding what the child told the police officer. And this is another indicia of consistency and of believability. Identical statement was made to the police officer. And then the child, without any coaching or out any coaxing, took the two anatomic dolls and showed the police officer with the adult male doll and the child female doll exactly the positioning that took place when Bok Ting was sexually assaulting the child. So not only do you have the use of appropriate language, but in an uncoached, unrequested portion of that interview, child requests the dolls and says, here's what happened, here's what he did to me, and showed the physical positions of Bok Ting and the child during the sexual assaults when the other child was kept out of the room. Let me ask you, you were starting through the Nevada Supreme Court and going back to the legal issue here. On remand, they then go back and apply Idaho, correct? Right. So my question is normally trustworthiness and those kind of determinations would have been made in the trial court initially and then you would have had the Nevada Supreme Court looking at it. Right. What legal standard do we use vis-a-vis the Nevada Supreme Court on those, I guess, really findings but made by an appellate court? The Nevada Supreme Court, I would say it's the same standard that's due deference because what the Nevada Supreme Court did was to review the record of the trial judge, Judge Mosley, in light of Idaho v. Wright. Idaho v. Wright came down, I think, in 92, 90 or 92, and this case occurred in 1988, and that's why the law was clarified during the direct appeal of the case. The Nevada Supreme Court applied Wright, and as I say, cited Wright, applied the standard faithfully, made findings of fact based on the record that they reviewed, based on the testimony, and faithfully applied Wright. And we know that under Lockyer v. Andretti, when the state courts do that, that is the deference means deference under 2254D. And certainly in our view, whether any of us like what the Supreme Court did, what the Supreme Court did was a faithful application of Idaho v. Wright. And I would, if I could, because you're concerned with the issue of unavailability, even though it was not determined in Idaho v. Wright, and we all agree that it was left unanswered, the Nevada courts found unavailability. Because the child... Two, she used the language that her mother and she used to talk about intimate functions. What else? What's the third guarantee? She repeated the statement verbatim to the police officer in a manner that was completely consistent. But, of course, that is undercut by a sworn testimony to the contrary. You could compare it with that, yes. I would point out that from a trial standpoint, the preliminary hearing transcript was admitted, and the jury, when the jury, and this is a related issue, but not identical to the issue we're discussing, the jury had the inconsistent statements before it and could weigh that issue. But getting back to your specific question, the final indicia of reliability in this statement was the fact that the child took the dowels, wasn't given the dowels by the officer. The officer had mentioned some dowels earlier and dropped the issue in his interview. The child then asks to see the dowels, and I'm paraphrasing. She says, let me show you what he did to me. Well, I think paraphrasing is very dangerous in this situation. Tell us, what did she actually say? She showed him mechanically. She didn't say much. Did she say he did this to me? Yes. She showed him with the dowels what Bakhting had done to her. There was a male adult anatomically correct dowel and a girl dowel, a child female dowel, and he showed the positioning of the different sex acts. And that was not requested by the officer. It was spontaneous by the child. I would point out also, since we're dealing with both the factual and legal issues under Idaho v. Wright, which according to the Supreme Court was the central issue here, the U.S. Supreme Court specifically said in that case they were not going to apply a mechanical test. We're going to leave it up to the lower courts to determine what these elements are. So I think it would be unfair for us here in the federal appellate court now to go back and say, well, you did it wrong, Justices of the Nevada Supreme Court, in spite of the fact that the U.S. Supreme Court said we are not going to apply a mechanical test as to which elements do and do not show this indicia of reliability. But the federal public defender basically is arguing that we should apply a mechanical test in spite of the fact that the U.S. Supreme Court said they were not going to do that. I think that's unfair to do to the Supreme Court. Well, you know, you can read it just the other way. What the Nevada court did was kind of mechanically echo the Supreme Court instead of looking at the whole thing in context. What the Supreme Court was telling them was these things vary with the context. You look at the context. You just don't check off a list. And when they didn't do it in context, they violated what the Supreme Court told them to do. But the context that they applied, the facts that they applied, were focused on the statements that were made by the child, and that is the exact language right out of Idaho versus right that you have to look at the kind. You can't look at the crowd rating evidence. You have to look at the evidence surrounding that statement. And the Nevada Supreme Court faithfully did that. They did exactly what the U.S. Supreme Court said they should do. And I think they did that to a point where under Lockyer v. Andretti, this court has to apply deference to that standard. I think they did that in good faith. You also had said earlier, you started to say that the Nevada courts had found unavailability. The trial court judge and the state Supreme Court both found, whether it's an issue or not, they found in this case the child was unavailable because she was completely unresponsive when she was on the witness stand. Now, do understand, Judge Noonan thinks that was a little too quick, and maybe something else could have been done. But the fact of the matter is the facts before that judge were they couldn't even get this child to stand up. And, Your Honor, you are correct to some extent that I am speculating as to the child's fear. But I would also point out that the U.S. Supreme Court has stated that child sex assault victims are different. That was recognized by the Supreme Court in the Craig case. It was recognized by the Supreme Court in the Wright case, that children are different. Every legislature that I know of in the country, including the Federal Congress, has drafted a lot of statutes that protect children both in the courtroom. There are privacy protections. They can have an attendant up there if they're having a difficult time. You've got the closed circuit television system. Our state has that. You have that, I think, under 18 U.S.C., the federal system, 18 U.S.C. 3509. I don't know your statutes as well as our state's statutes. But every legislature and courts recognize that children are different because of the courtroom system. Now, we know that in the Craig case you have to make an individualized determination. A legislature can't simply say all six-year-old kids because it's got to be an individualized determination. This victim, this child, they recognize that in Craig, recognize that in Idaho v. Wright. But in this case, an individualized determination was made, may have been a little quicker than we wanted it to be, but it was made on evidence that occurred in the hearing before the judge. And I think that's fair. I think what the Nevada Supreme Court did was a faithful application of Idaho v. Wright. My time is out. There are a couple other issues. I don't know if- I think everything's been pretty well briefed, so we'll hear now on rebuttal. Thank you. Here is the sum total of what happened in the courtroom before the determination was made that this child need not testify. Autumn, this is when you have to stand up to be sworn from the prosecutor. The court, can you stand up, Autumn? Can you stand up and raise your hand for me? Autumn, stand up now and raise your hand for us, okay. Prosecutor, Your Honor, I think under these conditions I think that the witness is unable to testify. Well, and they go on and the child is not required to testify. With regard to the determinations of particularized basis for trustworthiness, spontaneity and repetition, this is what the mother testified to. She looked like she had just woke up from a bad dream. Can you be confident that what happened here was not that this child did just wake up from a bad dream with a lot of sexual knowledge? She was in a one-room apartment with her mother who had practiced exotic dancing in front of her. She had taken showers with her parents, and her mother testified that the child had viewed sexual intercourse between the parents. Can you be confident, based upon what's happened in these proceedings, that what didn't happen here was that she woke up from a bad dream and that that went forth, and that in a minute that she got out from under mother, because remember, mother testified at the preliminary hearing that she was present during the interview with Detective Zinovich. She said that. She even described the questions that Zinovich was asking, and then the judge stopped that inquiry. The question, can we be confident, is that the test the Supreme Court gives us? I think the test is can you – probably not, okay, probably not. But the test is should you be giving the kind of deference to the Nevada Supreme Court that the state is suggesting that you can under the circumstances of this case? First of all, the Nevada Supreme Court failed to consider and refused to consider any of the circumstances that would show that the statements were not reliable, such as the fact that this child in the company of the counselor for the district attorney  such as the fact that the mother was breaking up with the husband, that the first thing that happened the next morning, the next morning, was she didn't take that child to the hospital. According to her testimony, the child has this bad dream, talks to her about it. And if this was on direct appeal, you'd have me in pretty bad throes right now. But where is – doesn't your argument have to be that there was an improper application of United States Supreme Court law? Yes. I mean, these are terrible cases any time involving these situations. But we only test what the Nevada court did based upon whether they made a proper application of Supreme Court law. Isn't that what you have to convince us? Yeah, and I think that you can tell – there are a couple of things that will tell you right away that the Nevada Supreme Court was objectively unreasonable in applying Idaho v. Wright. And that is why I'm focusing on the fact that they refused to consider those circumstances which refuted the reliability of the testimony. They would not do that. That is an unreasonable application of Idaho v. Wright. The other problem with this, and I think Judge McKeown is the one who started along this road, is that the Nevada Supreme Court simply said the district court did not err in its determination of reliability. The district court did not make the determinations that the Nevada Supreme Court made. The district court did not go through spontaneity, repetition. That's not what the trial court did. That is an unreasonable application of Idaho v. Wright. The mechanistic, I would suggest, application of Idaho v. Wright in order to be able to affirm the conviction for the second time. They had already dismissed this appeal once when it came back. They go through the factors, but the factors that they're going through were not factors that were examined by the trial court. The trial court never made those findings. The trial – one of the trial – My question was – I mean, it does give me some trouble that we kind of have this two-tiered. But if the Nevada Supreme Court does that, and if they did it properly – I recognize you think that they did it improperly – but if they did it properly, wouldn't we defer then to the Nevada Supreme Court? If you find that the method that they used to do that was not – was a reasonable application. Application. Application. And what I'm suggesting is that it was not, and that you must give relief to Mr. Bakke. That one factor is that there wasn't an underlying reliability finding. There was no underlying reliability. That is the one place – there are several places, as I pointed out in my briefs, that the Nevada Supreme Court was objectively unreasonable. That is one of those. All right. Thank you. Thank you, Your Honor. Ms. Rosman, I'd like to take the opportunity, since you're here in person, without reference to this case, but in general, your office does an admirable job in representing habeas petitioners. You don't always win, but you always give it a fairly thorough try, and I think you measurably improve the standards of justice in Nevada in what you do. Thanks, Your Honor. Thank you. Thank you. The case of Bockington v. Bayer is submitted. The next case for argument is United States v. Marks and Anderson. All right. The defense counsel has chosen to divide up your arguments. That is always a risky proposition because usually what happens is lawyer number one gets going and lawyers number two and three get squeezed. So you all have to go back to – well, I guess two of you are from California, one from Texas. You know, don't gang up on the guy from Texas. We won't. Here's the lineup. As I understand it, you have five minutes, is that correct? That's correct, Your Honor. And Mr. Ware will have eight, and then you and Mr. Snelling will come back, you for two and he for five on rebuttal. Is that right? Thank you, Your Honor. Okay. You may proceed. Good morning, Your Honor. Scott Tedman representing Richard Marks. I'd like to focus the time that I have with the court in terms of the Brady issue. That's what I want to focus my comments on. In this trial, Your Honors, we had a situation where the government produced a witness.
judges: Wallace, McKeown, Callahan